IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEDICAL PRODUCTS LABORATORIES, INC., :
: CIVIL ACTION
                 Plaintiff, :
:
    v. :
: NO. 12-6051
PREMIER DENTAL PRODUCTS COMPANY, :
:
                 Defendant. :

## MEMORANDUM

BUCKWALTER, S.J.                                                                                    January 31, 2013

Currently pending before the Court is the Motion by Defendant Premier Dental Products Company ("Premier") to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).  For the following reasons, the Motion is granted.

I.     FACTUAL BACKGROUND

According to the Complaint, Plaintiff Medical Products Laboratories, Inc. ("MPL") is a contract manufacturing company with expertise in research and development, manufacturing, packaging, and testing of quality medical products. (Compl. ¶ 8.)  Defendant Premier is a distributor of various medical products, including dental products. (Id. ¶ 9.)  On September 16, 1975, MPL and Premier entered into an agreement regarding the use of trademarks for products developed either by MPL or by MPL and Premier jointly and marketed by Premier (the "Trademark Agreement").  (Id. ¶ 10.)  The Trademark Agreement provided that "[a]ll current and future trademarks put into interstate commerce by Premier Dental Products Company covering merchandise made for their distribution by Medical Products Laboratories are jointly owned by Medical Products Laboratories and Premier Dental Products Company."  (Id. ¶ 11.)  With the

exception of some minor and immaterial modifications, this Agreement remains in full force and effect.  (Id. ¶ 12.)

In 2003, MPL began developing and manufacturing a topical prophylaxis paste called "Enamel Pro."  (Id. ¶ 13.)  Enamel Pro is a 1.23% Fluoride prophylaxis paste with amorphous calcium phosphate (ACP).  (Id. ¶ 14.)  MPL distributed Enamel Pro through Premier.  (Id. ¶ 15.)  On July 6, 2004, Premier filed an application for a trademark on the use of the mark "Enamel Pro."  (Id. ¶ 16.)  The application was approved and Trademark Reg. No. 3,118,123 was entered on the principal Register on July 18, 2006 (the "2006 Trademark").  (Id. ¶ 17.)  Premier is listed on the Register as the sole owner of the 2006 Trademark, while MPL is not included as an owner of the 2006 Trademark on any official document.  (Id. ¶¶ 18–19.)  On July 13, 2012, Premier filed a Joint Affidavit of Use and Incontestability, as required by 15 U.S.C. § 1058, asserting that the 2006 Trademark was still in commerce and re-listing Premier as the sole owner (the "2012 Affidavit").  (Id. ¶ 20.)

On October 12, 2006, Premier filed another application for a trademark on the use of the mark "Enamel Pro."  (Id. ¶ 21.)  This application was approved and Trademark Reg. 3,382,472 entered on the Principal Register on February 12, 2008 (the "2008 Trademark").  (Id. ¶ 22.)  As with the 2006 Trademark, Premier is the sole owner of the 2008 Trademark listed on the Register.  (Id. ¶ 23.)

MPL initiated the present litigation on October 23, 2012, setting forth three causes of action: (1) false and fraudulent registration of the 2006 Trademark pursuant to § 38 of the Lanham Act, 15 U.S.C. § 1120; (2) false and fraudulent registration of the 2008 Trademark pursuant to § 38 of the Lanham Act, 15 U.S.C. § 1120; and (3) breach of contract with respect to both

Trademarks. The essence of these claims is that Premier filed trademark applications for the two Enamel Pro Trademarks that did not identify MPL as a joint owner of the marks. Such actions, according to Plaintiff, were not only false and fraudulent for purposes of the Lanham Act, but also breached the 1975 Agreement between the parties. (Id. ¶¶ 25–43.) Premier filed the current Motion to Dismiss on December 14, 2012. MPL responded on December 28, 2012, and Premier filed a Reply Brief on January 14, 2012. This Motion is now ripe for judicial consideration.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## II. DISCUSSION

Defendant raises multiple grounds for dismissal of the present Complaint, including lack of subject matter jurisdiction, lack of standing, time bar under the applicable statute of limitations, and failure to adequately plead fraud under Rules 9(b) and 12(b)(6). Having considered the parties' briefs, the Court finds that Plaintiff's Lanham Act claims are time-barred and that supplemental jurisdiction should not be exercised over Plaintiff's remaining state breach of

contract claim.[1]

"The Lanham Act contains no express statute of limitations and the general rule is that when a federal statute provides no limitations, the court looks to the state statute of limitations for an analogous action." Ritz Hotel, Ltd. v. Shen Mfg. Co., Inc., No. Civ.A.05-4730, 2009 WL 1119496, at *3 (E.D. Pa. Apr. 27, 2009). The United States Court of Appeals for the Third Circuit has explicitly held that a claim under § 38 of the Lanham Act is subject to Pennsylvania's two-year statute of limitations for fraud claims. Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 143 (3d Cir. 1997) (citing 42 Pa. Cons. Stat. § 5524(7)). The court has further stated that, "Pennsylvania tolling principles would also be applicable in determining whether this suit is time-barred," meaning that the statute of limitations begins to run at the time "'the right to institute and maintain the suit arises.'" Id. at 144 (quoting Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)). In other words, "aggrieved parties must . . . bring their claim within two years of when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." Id. at 148. The Lanham Act expressly states that "[r]egistration of a mark on the principal register provided by this chapter . . . shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072.

In the present case, the Complaint contains two causes of action under § 38 of the Lanham Act. Count I alleges that Defendant filed a false application for trademark registration on the Principal Register on July 18, 2006 that did not list MPL as owner of the Trademark, despite

---

[1] Third Circuit law allows a statute of limitations defense to be raised by a Rule 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veteran's Admin. Hosp., 514 F.3d 1092, 1094 (3d Cir. 1975); see also Estrada v. Trager, No. Civ.A.01-4669, 2002 WL 31053819, at *2 (E.D. Pa. Sept. 10, 2002).

5

Premier's knowledge that MPL was a co-owner of the 2006 Trademark at the time the application for the Trademark was made. (Compl. ¶¶ 17, 26.) Count II asserts that Defendant filed another false application for a trademark registration on February 12, 2008, that also did not list MPL as owner of the trademark despite Premier's knowledge that MPL was co-owner of the 2008 Trademark at the time the application for the Trademark was made. (Id. ¶¶ 22, 33–34.) According to the Complaint, these failures constituted false statements made to the United States Patent and Trademark Office. (Id. ¶¶ 28, 35.) Under the two year statute of limitations, Plaintiff would have had to file the current action by July 18, 2008, for the 2006 Trademark, and by February 12, 2010, for the 2008 Trademark. Plaintiff did not initiate this action, however, until October 23, 2012, well past the expiration of the two-year limitations periods for both claims.

In an effort to escape this procedural bar, Plaintiff offers two arguments. First, Plaintiff points to the allegation of the Complaint that, "[f]or the 2006 Trademark, Premier filed a[] Joint Affidavit of Use and Incontestability on July 13, 2012 as required by 15 U.S.C. § 1058 asserting that the mark was still in commerce and listing Premier as the sole owner of the mark (the '2012 Affidavit')." (Compl. ¶ 20.) Plaintiff's cause of action for false or fraudulent procurement then includes a claim arising from the false or fraudulent filing of a maintenance or renewal affidavit, on October 12, 2012 (the "2012 Affidavit"), pursuant to 15 U.S.C. §§ 1058 and 1059. (Id. ¶¶ 29–30.) Because the 2012 Affidavit was submitted within two years of filing the Complaint, Plaintiff contends that its claim for false or fraudulent registration regarding that Affidavit falls within the statute of limitations.

Plaintiff's theory, however, is inaccurate. As noted above, "aggrieved parties must . . . bring their claim within two years of when they learned or should have learned, through the

6

exercise of due diligence, that they have a cause of action." Beauty Time, 118 F.3d at 148. The Lanham Act dictates that this accrual date occurs upon "[r]egistration of a mark on the principal register provided by this chapter." 15 U.S.C. § 1072. Under these principles, MPL was on constructive notice by 2006 and 2008, respectively, that the Trademarks at issue listed only Premier as the owner without listing MPL as a co-owner. Indeed, the Trademark registrations remained in full force and effect for ten years provided that MPL filed affidavits within the time periods set forth under 15 U.S.C. § 1058. The filing of the 2012 Affidavit alone—in order to continue the 2006 Trademark—did not create a new registration giving rise to a new cause of action with a new two year statute of limitations. Rather, the sole purpose of the affidavit requirement is simply "to remove from the register automatically marks which are no longer in use. Failure of registrants to file affidavits results in removal of such deadwood." Morehouse Mfg. Corp. v. J. Strickland & Co., 407 F.2d 881, 887–88 (C.C.P.A. 1969). It is in the public interest to maintain registrations of technically good trademarks on the register so long as they are still in use." Id.; see also Beauty Time, 118 F.3d at 148 ("The Lanham Act requires that the holder of a trademark submit an affidavit between the fifth and sixth years after registration of the trademark to establish that the mark is currently in use in commerce."). Accordingly, the Court finds that MPL was on constructive notice of Premier's claim of sole ownership of the 2006 and 2008 Trademarks at the time they were initially registered and not when Premier filed its 2012 Affidavit of continuing use.

Likewise, MPL's reliance on the Third Circuit case of Beauty Time, Inc. v. Vu Skin Sys., Inc., supra, is misplaced. In that matter, the information in the original trademark registration, filed in 1981, was truthful and accurate in that it listed the defendant as the sole user of the

trademark. 118 F.3d at 142. In 1987, the defendant and another individual formed a new corporation, Beauty Time, and purportedly assigned exclusive use of the trademark to the new corporation. Id. Thereafter, in February 1989, the defendant filed a combined declaration under 15 U.S.C. §§ 1058 & 1065, in his own name as owner and registrant, seeking renewal of the trademark, as well as an affidavit asserting that he was the sole owner and user. Id. at 143. Based on this affidavit, the Patent and Trademark Office renewed the defendant's registration of the trademark with no mention of the assignment to Beauty Time. Id. In 1991, the defendant began marketing and selling items bearing the trademark without the consent of Beauty Time, and, in 1994, the defendant began telling purchasers and retailers of Beauty Time products that he was the owner of the Trademark. Id. In 1995, Beauty Time filed suit under the Lanham Act. Considering a challenge to the timeliness of the complaint, the Third Circuit found that the constructive notice provision of § 1072 of the Lanham Act did not apply to the submission of affidavits under § 1058 to register the trademark or under § 1065 to establish incontestability. Id. at 149. Thus, the court remanded for further consideration of when the plaintiff discovered the defendant's wrongdoing. In so holding, the Court did not consider the original registration of the mark in 1981 as the accrual date because that original registration was neither fraudulent nor untruthful. Id.

In the present case, however, the registration of the 2006 and 2008 Trademarks were, according to the Complaint, fraudulent at the time of registration. Unlike in Beauty Time, there were no subsequent events after these registrations of which Plaintiff required notice in order to bring suit. Accordingly, the constructive notice provision of § 1072 of the Lanham Act applies

and Plaintiff's causes of action are deemed to have accrued in 2006 and 2008.[2]

In its second effort to avoid the time-bar, MPL contends that its claims with respect to the 2006 Trademark and 2008 Trademark are timely because MPL seeks only prospective injunctive relief, not damages. It goes on to argue that, "[c]ourts routinely find that prospective injunctive relief to remedy an ongoing wrong is not subject to the statute of limitations." (Pl.'s Resp. Opp'n Mot. Dismiss 10 (citing Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co., 943 F. Supp. 509, 518 (E.D. Pa. 1996).) Because the fraud upon the PTO is allegedly a continuing wrong that requires a remedy, Plaintiff reasons that the statute of limitations does not bar such prospective relief.

This argument, however, suffers from one fatal flaw—Plaintiff cannot articulate a legal basis on which it can maintain an action for injunctive relief under § 38. The Lanham Act, 15 U.S.C. § 1116, sets forth the precise circumstances under which a court may award injunctive relief, as follows:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and

---

[2] MPL also relies on one sentence in The Ritz Hotel, Ltd., v. Shen Mfg. Co., Inc., No. Civ.A.05-4730, 2009 WL 1119496 (E.D. Pa. Apr. 27, 2009). In that case, the court had originally dismissed the counterclaim plaintiff's § 38 claims on the grounds that they were time-barred. Id. at *1. In reviewing the motion for reconsideration, the court remarked that the counterclaim plaintiff was correct that "'procure [ment]' within § 38 includes maintaining a registration under § 8, 15 U.S.C. § 1058, or renewing a registration for another 10-year period under § 9, 15 U.S.C. § 1059; the '522 mark's renewal in 2006 could give rise to a viable § 38 claim if the United States Patent and Trademark Office ("PTO") had renewed the registration as a result of a false or fraudulent § 9 filing by RHL." Id. at *2. That sentence, however, was nothing more than *dicta*, as the court thereafter refused to reconsider its dismissal since the § 38 counterclaims were insufficient due to a lack of recoverable damages. Id. Given that the court never cited any legal authority in support of its theory or affirmatively decided that an affidavit under § 1058 could restart the already-running statute of limitations on a Lanham Act claim under § 38, the Court declines to give any controlling weight to this sentence.

>   upon such terms as the court may deem reasonable, to prevent the violation of ***any right of the registrant of a mark*** registered in the Patent and Trademark Office or ***to prevent a violation under subsection (a), (c), or (d) of section 1125*** of this title.

15 U.S.C. § 1116(a) (emphasis added).  Plaintiff, however, is not the registrant of either of the Trademarks.  Moreover, Plaintiff does not allege a claim of unfair competition—including false designations of origin, false descriptions, and dilution—under § 1125 of the Lanham Act.  Finally, § 38—the basis for Plaintiff's Lanham Act claims—expressly makes a party who fraudulently procures a trademark liable to "any person injured thereby ***for any damages sustained*** in consequence thereof." 15 U.S.C. § 1120 (emphasis added).  Nothing in that provision allows for a plaintiff to obtain injunctive relief.  Because Plaintiff has no legal basis for recovery of the injunction it seeks, its mere request for such relief cannot end-run the applicable statute of limitations.

In short, Plaintiff's claims under § 38 of the Lanham Act—concerning Trademarks registered in 2006 and 2008—were brought well outside the applicable statute of limitations period.  Plaintiff offers this Court no reason for its extensive delay in pursuing the present litigation, thereby making its Lanham Act claims time-barred and leaving only Plaintiff's state law breach of contract claim set forth in Count III of the Complaint.

Under 28 U.S.C. § 1367, "a district court has authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003).  "The purpose of supplemental jurisdiction is to promote convenience and efficient judicial administration." Resnick v. Lower Burrell Police Dept., No. Civ.A.09-893, 2010 WL 88816, at *3 (W.D. Pa. Jan. 8, 2010).  When the district court dismisses all of the claims over which it had original jurisdiction, it may

decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009). In order to determine whether supplemental state law claims should be dismissed when the federal law claims have been eliminated before trial, the court must consider the balance of factors including judicial economy, convenience, fairness, and comity. <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

Neither party in this case has engaged in a discussion of the foregoing factors. The Court, however, finds that the balance of such factors advocates against the exercise of supplemental jurisdiction. This case is at the most preliminary stages of litigation with Defendant having yet to even file an answer. This Court has heard no other motions other than the present one, held no status conferences, and entered no scheduling order. Moreover, the sole claim at issue is the breach of contract action brought purely under Pennsylvania state law—law which the Pennsylvania courts are better suited to address, particularly in the absence of any federal issue or other independent basis for federal jurisdiction. <u>See</u> <u>Carnegie-Mellon</u>, 484 U.S. at 351 ("[w]hen the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction.").

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's causes of action under the Lanham Act are time-barred under the appropriate statute of limitations. Because the only remaining claim sounds solely in state law, and because factors of judicial economy, convenience, fairness, and comity weigh against this Court's exercise of supplemental jurisdiction, the

Complaint is dismissed without prejudice to Plaintiff's re-filing the breach of contract claim in state court.